**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lynda Michelle Langfield,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-00579-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Lynda Michelle Langfield's Application for Disability Insurance benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 20, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 24, "Def. Br."), and Plaintiff's Reply Brief (Doc. 28, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 15, "R.") and now reverses and remands for computation and award of benefits.

**I.  BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on April 24, 2013, for a period of disability beginning on September 9, 2010. (R. at 18.) Her claim was denied initially on September 17, 2013, and upon reconsideration on March 27, 2014. (R. at 18.) Plaintiff appeared before the ALJ for a hearing regarding her claim on April 10, 2015,

which the ALJ denied on May 21, 2015. (R. at 18, 32.) On November 8, 2016, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3.)

This Court then vacated and remanded the case for further proceedings on March 23, 2018. (R. at 916–29.) *Langfield v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00056-PHX-JZB, 2018 WL 1456311, at *1–8 (D. Ariz. Mar. 23, 2018). Plaintiff appeared and testified at a hearing regarding her claim held on November 5, 2018, which the ALJ denied on January 8, 2019. (R. at 831, 843.) On January 21, 2020, once again, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 811–14.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairment: degenerative disc disease with stenosis. (R. at 835.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 843.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 837.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b), except she could frequently operate foot controls with the bilateral lower extremities. She could never climb ladders, ropes, or scaffolds. She could frequently climb ramps or stairs. She could frequently balance, kneel, and crawl. She could occasionally stoop and crouch. She could occasionally reach overhead with the bilateral upper extremities. She could occasionally tolerate exposure to dangerous machinery with moving mechanical parts and unprotected heights.

(R. at 838.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 842.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy

based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III. ANAYSIS**

Plaintiff raises two issues for the Court's consideration, which are the same issues that were raised the last time this Court reviewed this case. First, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 12–19.) Second, Plaintiff argues the ALJ erred in rejecting the opinion of Dr. John Peachy, who performed one medical examination of Plaintiff. (Pl. Br. at 20–24.)

The Court finds that the ALJ erred in rejecting Plaintiff's symptom testimony because the ALJ's only potential valid reason for rejecting the symptom testimony was inconsistencies with the medical evidence. Since this reason cannot stand on its own, the ALJ erred. Second, the ALJ erred in rejecting Dr. Peachy's medical opinion by not making clear arguments about how other medical evidence contradicted Dr. Peachy's opinion. For the following reasons, the Court reverses and remands for computation and award of benefits

**A. The ALJ erred in rejecting Plaintiff's symptom testimony.**

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 12–19.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical

evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 838.)

First, the ALJ opined that Plaintiff improved or remained stable with treatment. (R. at 839.) The ALJ pointed out that Plaintiff reported 60% to 70% relief with steroid injections. (R. at 325, 577, 839.) Plaintiff also reported her medications were effective in managing her pain. (R. at 325, 839, 389, 475, 485, 577, 631, 633, 668, 670, 678, 722, 737, 741, 769, 970, 1172, 1178, 1332, 1337, 1342, 1434, 1513.) The ALJ also noted that Plaintiff's treating providers consistently noted she was in no acute distress. (R. at 273–417, 423, 433, 647, 804, 839.) In the 2018 opinion, this Court noted that Plaintiff takes prescribed medications but indicated that nothing takes her pain away completely. (R. at 925, 47.) *Langfield*, No. CV-17-00056-PHX-JZB, 2018 WL 1456311, at *6. Plaintiff's relief from radiofrequency ablation and epidural injections was only short term. (R. at 925–26, 56.) *Id.* Plaintiff correctly points out that the Court found that this reason was insufficient in rejecting Plaintiffs' symptom testimony in 2018. The Court now finds that is once again true. (Pl. Br. at 17; R. at 926–27.) *Id.* at 7.

Additionally, the ALJ noted that Plaintiff did not stop working because of her medical impairments. (R. at 567, 839.) However, the Court noted in the 2018 opinion that Plaintiff indicated she did not know if her employment was terminated due to her medical problems. (R. at 925, 55.) *Id.* at 6. Additionally, the Court indicated that Plaintiff considered applying for "some type of secretarial type work" but decided not to because she did not think she would be able to work on a computer with her neck and back pain. (R. at 925, 46.) *Id.*

Next, the ALJ explained that Plaintiff's symptom testimony was inconsistent with Plaintiff's ADLs. (R. at 840.) Specifically, the ALJ pointed out that Plaintiff cares for her young grandchildren and recently adopted her two-year-old grandchild. (R. at 211, 840, 860, 969–70.) The ALJ found that Plaintiff's ability to care for her young grandchildren, even considering the help she has from family, is inconsistent with Plaintiff's symptom testimony. (R. at 840, 860.) This explanation provides no more detail than the ALJ's 2015 opinion, which this Court found was insufficient. *Id.* at 6–7. This Court also explained in 2018 that though Plaintiff cared for her young grandchildren, she had to make modifications to accommodate her physical limitations. (R. at 926.) *Id.* at 6. For example, this Court pointed out that Plaintiff makes meals for her grandchildren, but instead of cooking things, she will heat things up in the microwave because it is easier. (R. at 926.) *Id.* at 6.

Finally, the ALJ found that Plaintiff's symptom testimony was not consistent with the medical record. (R. at 839.) Specifically, the ALJ found that diagnostic imaging reports showed that Plaintiff has severe musculoskeletal disorders, but that the findings in those reports "fall short of substantiating her assertions of debilitating exertional restrictions." (R. at 839.) The ALJ noted that Plaintiff was diagnosed with degenerative disc disease in her neck and back and that diagnostic images showed mild to moderate findings including: central disc protrusion, anterior disc protrusion, broad-based disc protrusion, moderate bilateral neural foraminal narrowing, and disc bulge. (R. at 723, 839.) The ALJ noted that there was no objective evidence of severe stenosis or nerve root impingement and that diagnostic images of Plaintiff's spine were stable. (R. at 723, 839.) The ALJ also found that Plaintiff did not experience numbness or weakness. (R. at 439, 839.) Additionally, the ALJ explained that Plaintiff consistently had normal gait, normal strength and sensation in her upper extremities, and normal sensation in her lower extremities. (R. at 321, 327, 333, 351, 355, 359, 371, 423, 433, 439, 444, 495, 533–43, 549, 559–60, 657, , 672, 724, 729, 757–58, 771, 839, 1173, 1205, 1313, 1329–30, 1339, 1435–46.) Plaintiff's providers frequently noted she had tenderness to palpation in the paraspinous cervical muscles, trapezius muscles, mid para thoracic muscles, and lumbar paraspinal muscles. (R. at 327,

333, 339, 440, 444–45, 460, 576–77, 608, 662, 672, 839, 1436.) Plaintiff had positive leg raises and slightly reduced strength in her lower extremities, but the ALJ noted that there was no evidence that Plaintiff had difficulty standing or walking, and Plaintiff denied that she had difficulty walking or unsteadiness. (R. at 439–40, 444, 459, 514, 576, 582, 688–89, 703, 724, 729, 738–39, 839, 1172–73, 1179, 1204–05, 1330, 1339, 1436, 1514–15.) The ALJ's only potential valid reason for rejecting Plaintiff's symptom testimony—that it was purportedly inconsistent with the objective medical evidence—also fails because, even if true, it cannot form the sole basis for rejecting a claimant's testimony. *See Burch*, 400 F.3d at 682. Since the Court rejects the ALJ's other bases for rejecting Plaintiff's testimony, the ALJ's reliance on the objective medical evidence stands alone, and therefore, is inadequate. As such, the ALJ erred in rejecting Plaintiff's symptom testimony.

**B.     The ALJ erred in assigning little weight to Dr. Peachy's medical opinion.**

Plaintiff argues the ALJ erred in assigning little weight to the opinion of Dr. Peachy. (Pl. Br. at 20–24.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons

that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Peachy examined Plaintiff in April 2015. (R. at 802–10, 840.) He concluded that Plaintiff had a "complete form of disability." (R. at 806, 840.) The ALJ assigned little weight to Dr. Peachy's opinion because it was not consistent with the medical evidence in the record. (R. at 841.) For example, Plaintiff's treating providers noted Plaintiff had normal strength and sensation in her bilateral upper extremities and she has normal gait. (R. at 321, 327, 333, 351, 355, 359, 371, 423, 433, 439, 444, 495, 533–43, 549, 559–60, 657, 672, 724, 729, 757–58, 771, 841, 1173, 1205, 1313, 1329–30, 1339, 1435–46.) However, the ALJ noted that Dr. Peachy opined that Plaintiff could lift and/or carry more than 15 pounds but less than 20 pounds, Plaintiff could only sit for 2 hours in an eight-hour workday and stand or walk for 2 hours in an eight-hour workday, and Plaintiff would need to switch between sitting, standing, and walking every 46 to 60 minutes with a 10 to 15 minute rest between changing positions. (R. at 807, 841.) The ALJ thus found that Dr. Peachy's opinion was not consistent with the treating providers' opinions. (R. at 841.) The ALJ also found that medical evidence in the record did not support Dr. Peachy's opinion that Plaintiff would need to miss 4 to 5 days of work a month because Plaintiff's treating providers consistently noted that Plaintiff was in no acute distress. (R. at 273–417, 423, 433, 647, 804, 808, 841.) Finally, the ALJ noted that Dr. Peachy's opinion should be awarded little weight because Plaintiff reported her medication was effective for pain and had no side effects. (R. at 325, 389, 475, 481, 485, 577, 631, 633, 668, 670, 678, 722, 737, 741, 769, 1172, 1178, 1332, 1337, 1342, 1434, 1513.)

In 2018, the Court determined the ALJ had not provided specific and legitimate reasons for assigning little weight to Dr. Peachy's opinion. (R. at 921–25.) *Id.* at 3–5. Specifically, this Court found that the ALJ did not identify specific medical evidence that was inconsistent or contrary to Dr. Peachy's findings. (R. at 922.) *Id.* at 4. The same is true here.

Here, the ALJ has pointed to specific medical evidence in Dr. Peachy's opinion and specific medical evidence from treating providers, but the ALJ fails to take the last step in explaining how that evidence conflicts with Dr. Peach's opinion. The ALJ cites to evidence that treating providers opined Plaintiff had normal strength and sensation in her bilateral upper extremities and she has normal gait. (R. at 321, 327, 333, 351, 355, 359, 371, 423, 433, 439, 444, 495, 533–34, 549, 559–60, 657, 672, 724, 729, 757–58, 771, 841, 1173, 1205, 1313, 1329–30, 1339, 1435–46.) But the ALJ does not describe how these findings conflict with Dr. Peachy's opinion that Plaintiff had limitations on lifting, sitting, standing and walking, and would need to alternate these activities periodically, as set forth above.

The ALJ also found that Dr. Peachy's opinion that Plaintiff would need to miss 4 to 5 days of work a month conflicted with other medical opinions that Plaintiff was in no acute distress. (R. at 808, 841; Pl. Br. at 22.) This is an insufficient conclusion drawn by the ALJ. (Pl. Br. at 22.) The ALJ does not explain how Plaintiff not appearing in acute distress contradicts Dr. Peachy's finding that Plaintiff would need to miss 4 to 5 days of work a month.

The ALJ has, again, not provided specific and legitimate reasons in explaining why Dr. Peachy's opinion should be awarded little weight. The ALJ took one step further this time in pointing to specific evidence in the record and specific components of Dr. Peachy's opinion, but does not describe how Dr. Peachy's opinion and the other medical evidence cited actually conflict with each other.

C. **The appropriate remedy is to remand Plaintiff's case for a new disability finding.**

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 24–25.) The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no

- 9 -

outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

Here, all the elements of the credit-as-true rule are met. As discussed above, the ALJ erred by rejecting Plaintiff's symptom testimony and Dr. Peachy's opinion. Next, the record is fully developed, and further proceedings would serve no useful purpose. The record is free of significant conflict and does not require further development. Finally, the improperly discredited evidence, if credited as true, would require the ALJ to find Plaintiff disabled. At Plaintiff's hearing, the vocational expert testified that limitations consistent with Dr. Peachy's opinion would be inconsistent with full-time employment. (R. at 870.) The vocational expert also testified that limitations consistent with Plaintiff's symptom testimony would be inconsistent with full-time employment. (R. at 871–73.) Since the Court finds the record raises no serious doubt that Plaintiff is, in fact, disabled, the Court will remand Plaintiff's case for computation and award of benefits.

Accordingly, the Court applies the credit-as-true rule and will remand this matter for computation and award of benefits.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for computation and award of benefits consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 25th day of June, 2021.

Honorable John J. Tuchi
United States District Judge